**SO ORDERED.**

**SIGNED this 6th day of June, 2017.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>CARL JAMES DENNING,<br><br>     Debtor. | Case No. 15-12558<br>Chapter 13 |
| SOUTHWIND BANK,<br><br>     Plaintiff,<br><br>vs.<br><br>CARL JAMES DENNING,<br><br>     Defendant. | Adv. No. 16-5043 |

## ORDER DENYING SUMMARY JUDGMENT

Debt obtained by fraud is, upon appropriate proof, excepted from a debtor's discharge, even if the note evidencing the debt is canceled by the debtor executing a

1

renewal and consolidation note. Here, Southwind Bank renewed a series of term loans it made to the debtor to finance a construction project by renewing and consolidating them into one note with monthly payments. The Bank responded to the debtor's chapter 13 filing by filing an adversary proceeding alleging that the underlying debts had been "obtained by" the debtor's fraudulent conduct and seeking to except those debts from his discharge. The debtor argues that the renewal and cancelation amount to a novation of the previous debts that cleanses them of their allegedly fraudulent nature. The fact that debtor's payment obligations have changed does not, in the absence of other proof in the summary judgment record, change the nature of the underlying debt itself. The debtor's motion for summary judgment is denied.[1]

Findings of Fact

The final pretrial order includes a list of stipulated facts that, along with other uncontroverted facts established by the motion and response, may be summarized as follows. In February of 2013, Carl Denning applied for a loan to fund his proposed rebuilding and conversion of an old stone barn into a house. Under his agreement with the Bank, Denning granted the Bank a mortgage on the real estate and the barn and, pursuant to the parties' agreement, he was to submit loan draw requests to the Bank that itemized the labor and materials to be paid for with loan proceeds. He made a series of requests and, in September of 2013, asked for an increase in his line

---

[1] Southwind Bank appears by its attorney Dennis R. Davidson of Thompson, Arthur, Davidson & Katz. Carl Denning appears by his attorney Dan W. Forker, Jr. of Forker Suter LLC.

2

of credit. The Bank agreed. By March of 2014, he owed the Bank $194,786.25. After bank officers visited the site and viewed the progress of the work, the Bank asked Denning to execute a new promissory note that renewed and consolidated the previous construction notes into one loan to be repaid in monthly payments.[2] The previous construction notes were marked "canceled by renewal" and dated March 31, 2014. This also ended Denning's ability to request further advances. No new credit was extended at that time.[3] Nothing in the consolidated note or summary judgment record suggests that the parties discussed or addressed the Bank's claim of fraud or nondischargeability of the debt at the time Denning executed the consolidated note. Denning filed a chapter 13 bankruptcy on November 30, 2015 and the Bank filed this nondischargeability complaint on March 4, 2016.

The additional uncontroverted facts are that, from the beginning of the construction loan transaction in 2013, Denning signed a series of notes. After the Bank's officers were prompted to inspect the premises in March of 2014, the Bank decided that the loan proceeds had not been applied to the project, prompting the Bank to consolidate the notes into one instrument. The parties dispute whether the Bank's March 2014 inspection was prompted by Denning's request for more money or by something an officer learned from a realtor's Facebook post. There is also a dispute about how the Bank may have benefitted from the consolidation: Denning says the renewal replaced the loans in good standing on the Bank's call list; the Bank

---

[2] The consolidated note called for eight monthly interest payments and a balloon payment on the date of maturity, December 31, 2014. *See* Adv. Doc. 38-3, pp. 1-2.
[3] *See generally*, Pretrial Order, Adv. Doc. 34, pp. 4-5.

3

says that substituting a consolidated monthly payment note for several term loans protected the Bank's financial interests. Neither dispute materially affects the legal issue posed by this motion.

Summary Judgment Standards

To prevail on summary judgment, Denning must show that there are no disputed material facts and that he is entitled to judgment as a matter of law.[4] In the absence of any material factual controversy, we focus on the legal aspect of the Denning's argument--whether those undisputed material facts establish as a matter of law that his position is correct.[5] Rule 56 governs the standards for granting summary judgment and federal bankruptcy law governs the dischargeability of a debt under § 523(a)(2)(A), but Kansas substantive law governs whether a novation occurred.[6]

Analysis

---

[4] Fed. R. Civ. P. 56(a) (summary judgment shall be granted if movant shows no genuine dispute of any material fact "*and* the movant is entitled to judgment as a matter of law."). Fed. R. Bankr. P. 7056 makes Rule 56 applicable in adversary proceedings.

[5] Even if there are no factual controversies, the movant must demonstrate that those facts entitle it to summary judgment under the applicable law. *See Clifton v. Craig,* 924 F.2d 182, 183-84 (10th Cir.1991) (if material facts are not in dispute, "we must next determine if the substantive law was correctly applied."); *Black v. Baker Oil Tools, Inc.,* 107 F.3d 1457, 1460 (10th Cir. 1997).

[6] *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1106 (10th Cir. 1991) (federal procedural law prescribes standard of review of summary judgment but state substantive law governs contract interpretation issues); *Larkin v. Bank of America, N.A. (In re Larkin),* 553 B.R. 428 (Bankr. D. Kan. 2016) (applying Kansas law on novation in determining whether plaintiffs' breach of contract claim stated a claim for relief under Fed. R. Civ. P. 12(b)(6)); *Sellner v. Patterson (In re Patterson)*, 375 B.R. 652, 662 (Bankr. D. Kan. 2007) (federal bankruptcy law governs whether a debt is nondischargeable).

Denning argues that the consolidated renewal note was a novation that replaced his old debts with one new one. As the Bank doesn't suggest that this new debt was "obtained by" fraud, it cannot be an exception to Denning's discharge. The Bank responds that the consolidated note evidences the same debts that the debtor obtained through his bad conduct, just in a different form.

Section 523(a)(2)(A) of the Bankruptcy Code excepts a "debt" from a debtor's discharge if it was "obtained by" false pretenses, false representations, or actual fraud.[7] At trial, the Bank would have the burden to show that the debtor incurred the debt by knowingly making a false statement with the intent to deceive it and upon which the Bank reasonably relied to its detriment, resulting in the Bank being harmed.[8] "Debt" is a defined term in the Code. It is "liability on a claim."[9] A "claim" is defined as a "right to payment."[10] The debt represented by the consolidated note appears to be the same liability on a "right to payment" as that evidenced by the former term notes.

A novation occurs when a new debt is substituted for an existing one and the existing obligation is released, thereby extinguishing the old debt.[11] A novation is never presumed and the burden to show that one has occurred falls upon the party asserting it to establish its essential requirements. Paramount among those is the

---

[7] 11 U.S.C. § 523(a)(2)(A).
[8] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).
[9] 11 U.S.C. § 101(12).
[10] 11 U.S.C. § 101(5)(A).
[11] *Davenport v. Dickson*, 211 Kan. 306, 310, 507 P. 2d 301 (1973).

5

intent of the parties.[12] Assuming that Denning's consolidated renewal note in fact novated the previous notes, nothing about the consolidated note changes the manner in which the underlying debt it evidences was incurred. In other words, if the novated debt was incurred as a result of Denning's alleged bad conduct, a bankruptcy court may still examine that in the dischargeability context. Only the terms of the debt's repayment have changed.[13]

The manner or form that a debt takes does not change the nature of the debtor's previous dealings, at least for dischargeability purposes.[14] Two United States Supreme Court cases graphically illustrate this. The first is *Brown v. Felsen*, a pre-Code case where the parties settled a state court collection action by stipulating to a judgment being entered against the debtor.[15] When the debtor subsequently filed a bankruptcy petition, the creditor claimed that the debt was not dischargeable due to the debtor's fraud under § 17a(2) and (4) of the Bankruptcy Act of 1898. The bankruptcy court held that the state court record did not establish the debtor's fraud, so the nondischargeability claim was precluded by res judicata. Though both the district court and the court of appeals affirmed, the Supreme Court reversed, holding that debts arising from fraud are excepted from discharge and that reducing them to

---

[12] *Id*.
[13] *See Elliott v .Whitney,* 215 Kan. 256, 260, 524 P.2d 699 (1974) (To establish novation by implied intention of the parties, it must appear that the new contract is so radically different from the old one that it necessarily supersedes it as an entirety.).
[14] *Brown v. Felsen*, 442 U.S. 127 (1979).
[15] *Id*.

6

judgment does not bar further inquiry by the bankruptcy court into the true nature of the debt.[16]

Years later, in *Archer v. Warner*, the Court again faced this issue, this time arising under § 523 of the current Bankruptcy Code.[17] In that case, one party sold the other a business. The buyers sued, claiming that the sellers had defrauded them. The sellers settled the case by giving the buyers a promissory note for $100,000. Then they defaulted and filed bankruptcy. When the buyers sought to except the note from the sellers' discharge, the bankruptcy court found the debt to be dischargeable. That judgment was affirmed by the district court and the court of appeals which held that the settlement agreement, releases, and note amounted to a novation that created a new debt. As the new debt hadn't been obtained by fraud, it was dischargeable.[18]

The Supreme Court reversed, holding that even though the settlement agreement, releases, and promissory note "completely released each and every underlying state law claim," the debt remained one "for money obtained by fraud, within the terms of the nondischargeability statute."[19] Applying the rule in *Brown v. Felsen*, the Court said that even where a state law fraud claim might be precluded or released, that preclusion did not prevent the bankruptcy court from looking beyond the state court record to decide whether the debt was for money obtained by fraud.[20]

---

[16] *Id.* at 138.
[17] *Archer v. Warner*, 538 U.S. 314 (2003).
[18] *Id.* at 318. *See In re Warner*, 283 F.3d 230 (4th Cir. 2002), *rev'd sub nom. Archer v. Warner*, 538 U.S. 314 (2003).
[19] 538 U.S. 314, 319.
[20] *Id.* at 320-21.

7

Rather, the dischargeability provision applies to *all* debts that arise from fraud. Noting that the debtors had not established that the parties meant to resolve the issues of fraud in the first proceeding, the Supreme Court held that although the settlement agreement and releases "worked a kind of novation," "that fact does not bar the Archers from showing the settlement debt arose out of false pretenses" or other fraudulent conduct.[21]

Here, there has been no "prior proceeding." All the Bank did was renew and consolidate the old debts into one instead of calling and enforcing them. At best, the consolidated note recast the contractual terms of repayment. The fact that the original debt was renewed in this case as opposed to compromised as in *Archer*, is a distinction without a difference for the purpose of determining dischargeability. *Brown* and *Archer* teach that resolving the means of repaying a fraudulently obtained debt is not the same as determining that the fraud itself did not occur.[22] Accordingly, Denning is not entitled to judgment as a matter of law that by consolidating his debts

---

[21] *Id.* at 323.
[22] And so do other cases. *See, e.g., Los Alamos Nat'l Bank v. Martinez (In re Martinez)*, Adv. No. 08-1143, 2010 WL 3069978 at *7 (Bankr. D.N.M. July 30, 2010) ("… a debt to a creditor under an agreement that settles or refinances a debt to that creditor attributable to fraud is nondischargeable if the debt that was settled or refinanced would have been nondischargeable, regardless of whether there was a novation extinguishing the tainted debt, unless the creditor specifically agreed to release any claims for fraud in connection with the settlement or refinance."); *Star High Yield Investment Mgmt. Corp., Inc. v. Schwartz (In re Schwartz),* Adv. No. 07-3170, 2007 WL 3051865 at *3 (Bankr. S.D. Tex. 2007) (In § 523 proceedings, the relevant inquiry focuses on the conduct from which the debt originally arose and the history of a debt's origin can't be erased through a merger clause in a settlement agreement.). *See also Ramey v. Barton (In re Barton)*, 321 B.R. 869, 874 (Bankr. N.D. Ohio 2004).

8

under a renewal note, the Bank waived its ability to seek a determination that the underlying debts had been "obtained by" his alleged fraud. His summary judgment motion is DENIED.

This matter remains set for trial on July 17, 2017.

###